# In the United States Court of Federal Claims

No. 06-96C

(Filed: July 30, 2007)

| | |
|---|---|
| ************************************* * <br><br> DENNIS W. JORDAN, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. <br><br> ************************************* * | * <br> * <br> * Claim of Income Tax Settlement; Offer <br> * and Acceptance; Lack of Authority of <br> * IRS Offer Specialist; Lack of <br> * Jurisdiction Where Taxpayer Has Failed <br> * to Pay Taxes or File Administrative <br> * Claim for Refund; Anti-Injunction Act; <br> * Treatment of Rule 12(b)(6) Motion to <br> * Dismiss as Motion for Summary <br> * Judgment. <br> * |

*H. William Mahaffey*, Rothgerber Johnson & Lyons LLP, Colorado Springs, Colorado, for Plaintiff.

*Kent G. Huntington*, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Steven J. Gillingham*, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., *Randall Preheim*, Internal Revenue Service, Denver, Colorado, Of Counsel, for Defendant.

OPINION AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

WHEELER, Judge.

This case is before the Court on Defendant's August 4, 2006 motion under Rules 12(b)(1) and (b)(6) to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiff Dennis Jordan brought this suit against the United States on February 7, 2006, alleging that the Internal Revenue Service ("IRS") breached an express contract to settle his outstanding tax liabilities for the years 1999 and 2000. Following the briefing of Defendant's motion to dismiss, the Court requested supplemental briefs regarding the authority of the pertinent IRS representatives to bind the

-1-

United States to the alleged settlement agreement. Order, Dec. 5, 2006. Thereafter, the parties requested a stay of proceedings to discuss a compromise of this action. When those discussions proved unsuccessful, the parties filed their supplemental briefs with the Court on May 1, 2007. Defendant's motion to dismiss now is ready for decision.

Mr. Jordan claims that he entered into a binding settlement agreement with the IRS to pay $12,721.00 in full satisfaction of $38,200.87 in tax liabilities for the years 1999 and 2000. Mr. Jordan asserts that IRS representatives with delegated authority extended a counteroffer to him in May 2003 which he promptly accepted. Mr. Jordan states that the IRS breached the settlement contract by failing to discharge the balance of Mr. Jordan's tax liabilities, and he asks for "money damages for such breach equal to the balance of such tax liabilities." Plaintiff's Sept. 6, 2006 Response at 2. Mr. Jordan, however, has not paid any portion of his tax liability to the IRS for the years 1999 and 2000, and he has not filed an administrative claim for refund with the IRS.

Defendant contends that no such settlement contract was formed with Mr. Jordan, and that, in any event, the IRS employee with whom Mr. Jordan corresponded lacked the authority to bind the IRS. Defendant further asserts that the absence of a contract leaves Mr. Jordan without an actionable claim and deprives this Court of subject matter jurisdiction. Lacking a binding contract, Mr. Jordan's action could only be for an income tax refund. However, since Mr. Jordan has not paid any of his taxes and has not filed an administrative claim for refund, the Court is without jurisdiction to hear such a claim. To the extent Mr. Jordan is requesting specific performance, a declaratory judgment, or injunctive relief, Defendant asserts that the Court similarly does not possess jurisdiction.

For the reasons explained below, the Court finds that the IRS did not enter into a binding settlement contract with Mr. Jordan. As the parties' correspondence demonstrates, the IRS did not make a counteroffer to Mr. Jordan, and thus Mr. Jordan was not in a position to accept a counteroffer. Instead, the Court finds that Mr. Jordan submitted an amended offer to the IRS, which the IRS did not accept. Further, the Court agrees with Defendant that the IRS employee who corresponded with Mr. Jordan did not possess authority to bind the IRS. Without a contract claim, Mr. Jordan cannot maintain a tax refund action, because he has not fulfilled any of the necessary jurisdictional prerequisites.

In reaching this decision, the Court has considered and relied upon supporting materials beyond the pleadings from both parties. In such circumstances, Rule 12(b) provides that Defendant's motion should be treated as one for summary judgment under Rule 56. Accordingly, the Court grants summary judgment for Defendant.

Factual Background[1]

Plaintiff Mr. Jordan has outstanding federal tax liabilities for 1999 ($20,946.04) and 2000 ($17,254.83), plus penalties and interest.  Complaint, ¶¶ 3, 4.  On March 12, 2002, the IRS received a Form 656 "Offer in Compromise" from Mr. Jordan to settle these tax liabilities for $10,000.  Defendant's Appendix ("Deft's App.") at 1-4.  Mr. Jordan claimed that he was unable to pay the tax liabilities in full.  Id. at 3.  On May 19, 2003, an IRS Offer Specialist, Ms. Marianna Caldera, responded to Mr. Jordan by stating that "we cannot accept an offer for less than $12,721.00 for a cash offer (payable within 90 days)."  Ms. Caldera further stated that "[i]f you do not respond to this letter within 14 days of the date of this letter, your offer cannot be recommended for acceptance, *and a Federal Tax Lien will be filed*."  Id. at 5 (emphasis in original).

By letter dated May 30, 2003, Mr. Jordan submitted a revised Form 656 "Offer in Compromise" to the IRS stating that he would pay $12,721.00 to settle his 1999 and 2000 tax liabilities.  Complaint, Exh. C.  Mr. Jordan also sent a check to the IRS for $12,721.00 on August 18, 2003 representing what he believed was the agreed upon payment.  Deft's App. at 18-20.  Thereafter, from a review of records provided by Mr. Jordan, Ms. Caldera learned that Mr. Jordan's financial condition would improve as of October 2003 when his obligation to pay his former wife monthly support payments of $3,000.00 expired.  Deft's App. at 24-27.  By letter dated August 15, 2003, Ms. Caldera informed Mr. Jordan of the IRS's preliminary analysis that Mr. Jordan had "the ability to pay [his] liability in full within the time provided by law."  Id. at 14-15.  For this reason, the IRS considered but ultimately rejected Mr. Jordan's $12,721.00 offer.  IRS Transcript History, Plaintiff's Appendix ("Pltf's App.") at 19-20, 22.

On March 2, 2004, an IRS Group Manager, Ms. Donna Seibel, officially rejected Mr. Jordan's $12,721.00 offer, stating that "[b]ased on the financial information you submitted, we have determined you can pay the amount due in full."  Deft's App. at 21.  On May 6, 2004, the IRS sent a check to Mr. Jordan for $12,721.00 drawn upon the United States Treasury.  Complaint ¶ 18.  On May 24, 2004, through his counsel, Mr. Jordan appealed the IRS's rejection of his offer.  Id. ¶ 19.  The IRS Office of Appeals sustained the rejection of Mr. Jordan's offer on February 23, 2005.  Deft's App. at 28.

---

[1] The facts in this matter are derived from the documents provided as attachments to Plaintiff's complaint, and in the appendices accompanying Defendant's motion and Plaintiff's response.  The Court is satisfied that the facts necessary to decide this matter are not in dispute.

Discussion

A.  Standards for Decision

In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court accepts as true the undisputed allegations in the Complaint, and draws all inferences in favor of the non-moving party.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746 (Fed. Cir. 1988).  Plaintiff bears the burden to establish by a preponderance of the evidence the facts sufficient to invoke the Court's jurisdiction.  See Reynolds, 846 F.2d at 748.  In determining whether Plaintiff has met his burden, the Court may look "beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists."  Lechliter v. United States, 70 Fed. Cl. 536, 543 (2006) (citing Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991)). In the present case, both Plaintiff and Defendant have submitted documents in support of their pleadings.  The Court refers to these materials "to the extent that they allow the court to determine whether it has jurisdiction over this case."  Id.

The standard for dismissal under Rule 12(b)(6) parallels the standard for review of jurisdictional issues under Rule 12(b)(1).  Baird v. United States, 71 Fed. Cl. 536, 542 (2006).  However, where "matters outside the pleading" are before the Court on a motion to dismiss for failure to state a claim, the Court regards the motion as one for summary judgment.  Rule 12(b) provides:

> If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in RCFC 56.

As noted, the Court has accepted from both parties supporting materials beyond the pleadings, and therefore it is appropriate to convert Defendant's Rule 12(b)(6) motion into a motion for summary judgment under Rule 56.  District of Columbia v. United States, 67 Fed. Cl. 292, 301-02 (2005) (citing De Brousse v. United States, 28 Fed. Cl. 187, 188 (1993) and Schultz v. United States, 5 Cl. Ct. 412, 416 (1984)).  In such circumstances, Rule 12(b) directs the Court to provide the parties with "a reasonable opportunity to present all material made pertinent to such a motion by RCFC 56."  The parties in the present case have had this opportunity.  The Complaint, Defendant's Motion to Dismiss, and Plaintiff's Response each include attached exhibits that the Court has accepted and relied upon in reaching this decision.  See District of Columbia, 67 Fed. Cl. at 301 ("In this instance, because defendant moved in the alternative for summary judgment, plaintiff has had ample time to submit materials and arguments opposing summary judgment.  This is evidenced most clearly by the

exhibits submitted by plaintiff with its original motion for summary judgment and its opposition briefs.").

Under Rule 56, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden to establish the absence of disputed genuine issues of material fact in this case belongs to Defendant. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This initial burden may be discharged, however, if Defendant can demonstrate "an absence of evidence to support the nonmoving party's case." Buesing v. United States, 42 Fed. Cl. 679, 693 (1999) (citing Celotex, 477 U.S. at 325). If Defendant succeeds, "the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists[.]" Id. (citations omitted).

B.  Whether The Parties Formed An Enforceable Contract

Setting aside the jurisdictional question of whether Mr. Jordan has properly stated a complaint for money damages, the Court will first consider Defendant's Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. For purposes of this discussion, the Court will assume that Plaintiff has properly alleged a breach of contract within the Court's jurisdiction. See, e.g., Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed. Cir. 1995) ("[T]he court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy. Jurisdiction, therefore, is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover[.]") (citations omitted). With this assumption, the question to be decided is whether the IRS and Mr. Jordan entered into an enforceable contract settling Mr. Jordan's tax liability for 1999 and 2000.

A review of the relevant correspondence reveals that the IRS did not at any time make an offer or counteroffer to Mr. Jordan, and thus Mr. Jordan was not in a position to create a binding contract through his acceptance. Although Mr. Jordan refers to Ms. Marianna Caldera's May 19, 2003 letter as a "counteroffer," and his response as an "acceptance" (Complaint ¶¶ 9, 10), the exchange between the parties does not support Mr. Jordan's contention. Ms. Caldera's letter on behalf of the IRS contains the following statements:

> If the payment terms of *your amended offer* exceed ninety days, a
> notice of Federal Tax Lien will be filed . . . . You may also provide any

other information you believe *we should consider in making a final
determination as to whether to accept your offer* . . . .  Also, *if your
offer is accepted*, your compliance will be monitored for 5 years.  In
that time, if you do not comply with all filing and paying requirements
. . . *your offer* will be defaulted . . . .  If you do not respond within 14
days of the date of this letter, *your offer cannot be recommended for
acceptance* . . . . [If] *your offer is rejected* you will receive information
regarding how to appeal . . . .

Complaint, Exh. B; Deft's App. at 5-6 (emphasis added).  This letter on its face solicited an
amended offer from Mr. Jordan, and did not itself constitute an IRS offer or counteroffer.
Indeed, the IRS Form 656 that Mr. Jordan sent back to Ms. Caldera is entitled "Offer in
Compromise."  Deft's App. at 7.  This exchange did not constitute a valid offer and
acceptance.  The IRS formally rejected Mr. Jordan's amended offer through the March 2,
2004 letter from an IRS Group Manager, Ms. Donna Seibel.  Deft's App. at 21-23.

      Even if the May 19 and 30, 2003 exchanges between Ms. Caldera and Mr. Jordan could be
regarded as a contract, the Court must examine whether Ms. Caldera possessed the authority to bind
the IRS.  In addition to the standard elements of offer, acceptance, and consideration, a valid
contract with the Unites States requires authority "on the part of the government
representative who entered or ratified the agreement to bind the United States in contract."
Total Medical Management, Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997).  See
also Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("A contract
with the United States also requires that the Government representative who entered or
ratified the agreement had *actual* authority to bind the United States.") (emphasis added).

      As Defendant notes, a government agent's apparent authority "is not sufficient to bind
the government . . . even where the agent in question believed that he held such authority[.]"
See Arakaki v. United States, 71 Fed. Cl. 509, 515 (2006) (citing City of El Centro v. United
States, 922 F.2d 816, 820 (Fed. Cir. 1990)).  When negotiating a contract with the
Government, therefore, it is incumbent on a private party to determine whether his public
counterpart has the necessary authority to bind the United States.  See, e.g., Brooks v. United
States, 70 Fed. Cl. 479, 486 (2006) (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380
(1947)).  Moreover, the risk of accurately assessing the scope of a government agent's
authority is squarely on the private party.  Merrill, 332 U.S. at 384 ("[A]nyone entering into
an arrangement with the Government takes the risk of having accurately ascertained that he
who purports to act for the Government stays within the bounds of his authority.").  The
private party retains this risk even where a Government agent displays apparent authority.
Trauma Serv. Group, 104 F.3d at 1325) ("this risk remains with the contractor even when the
Government agents themselves may have been unaware of the limitations on their

authority."). This rule shields the Government from the acts of its own agents. <u>Brooks</u>, 70 Fed. Cl. at 486 (citing <u>Flexfab, LLC v. United States</u>, 424 F.3d 1254, 1263 (Fed. Cir. 2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept.")). Commensurate with this risk is a plaintiff's burden to prove the scope of the authority asserted. <u>See</u> <u>Arakaki</u>, 71 Fed. Cl. at 516.

Here, as the IRS previously explained to Mr. Jordan, Ms. Caldera did not have the authority to enter into a contract with Mr. Jordan. Deft's App. at 28. The IRS Group Manager, Ms. Seibel, possessed the requisite authority, but in her only correspondence with Mr. Jordan, she rejected Mr. Jordan's amended offer. <u>Id.</u> at 21-23, March 2, 2004 letter. Thus, no person with authority to bind the IRS entered into a binding contract with Mr. Jordan.

## C. The Court Lacks Jurisdiction Over Plaintiff's Other Claims

Upon the rejection of Plaintiff's breach of contract claim, the Court is without jurisdiction to consider Mr. Jordan's other claims for relief. In general, the Court does possess jurisdiction to adjudicate Federal tax refund suits. <u>See</u> <u>New York Life Ins. Co. v. United States</u>, 118 F.3d 1553, 1558 (Fed. Cir. 1997); <u>Fisher v. United States</u>, 69 Fed. Cl. 193, 196 (Fed. Cl. 2006); <u>Hunsaker v. United States</u>, 66 Fed. Cl. 129 (2005). A plaintiff may assert a tax refund claim in this Court, provided the taxpayer has made full payment of the tax liability, penalties, and interest. <u>See</u> <u>Flora v. United States</u>, 362 U.S. 145, 163 (1960); <u>Hunsaker</u>, 66 Fed. Cl. at 131. Moreover, the taxpayer in this Court also must have "duly filed" a tax refund claim with the IRS for the tax year(s) in controversy. 26 U.S.C. § 7422(a) (no tax suit or proceeding shall be maintained until a claim for refund or credit has been duly filed with the Secretary of the Treasury); 26 U.S.C. § 6532(a)(1) (tax suit or proceeding may not be commenced until six months after the date of filing the required claim).

To the extent that Mr. Jordan's Complaint could be construed as a suit for tax refund, the Court lacks jurisdiction to consider it because Mr. Jordan has failed to satisfy the prerequisites to filing such a suit.

Similarly, the Court lacks jurisdiction over any action to enjoin the IRS from collecting assessed taxes. The Anti-Injunction Act, 26 U.S.C. § 7421, precludes the Court from exercising jurisdiction over Mr. Jordan's apparent claim to prevent the IRS from collecting $38,200.87, plus interest and penalties, for 1999 and 2000. The Anti-Injunction Act states in relevant part:

> [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a).

The Supreme Court has held that "the manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7 (1962). Our Court has explained that "[i]n order to bring suit in this Court, the plaintiff must pay the taxes assessed, file a claim for refund with the IRS in accordance with [Internal Revenue Code] § 7422(a), and then wait six months[.]" Lyashenko v. United States, 41 Fed. Cl. 626, 630 (1998). Thus, any apparent effort by Mr. Jordan to enjoin the IRS from collecting properly assessed taxes is contrary to law and must be rejected.

The claim for relief in Mr. Jordan's Complaint also might be construed as seeking a declaratory judgment that he had a valid contract with the IRS which ought to be enforced, such as through specific performance. However, our Court is not authorized to grant a declaratory judgment or to direct specific performance in the circumstances presented here. Id. (explaining that the Court is generally proscribed from issuing declaratory judgments); Rig Masters, Inc. v. United States, 42 Fed. Cl. 369, 373 (1998) (citing United States v. King, 395 U.S. 1, 3-4 (1969) (Court does not possess jurisdiction over claims for specific performance)). The Anti-Injunction Act, explained above, prevents the Court from entertaining suits for a declaratory judgment or specific performance in tax matters.

<u>Conclusion</u>

Based upon the foregoing, Defendant's motion to dismiss under Rules 12(b)(1) and (b)(6) is GRANTED. For the reasons stated, the Court is treating Defendant's motion for failure to state a claim as a motion for summary judgment under Rule 56, and accordingly, summary judgment is entered for Defendant. The Clerk is directed to enter judgment for Defendant. No costs are awarded to either party.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge
